IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Millanyo Woody, #227810,<br><br>        Petitioner,<br><br>v.<br><br>Warden Tucker,<br><br>        Respondent. | Case No.: 2:19-cv-00785-SAL<br><br>**OPINION AND ORDER** |

Petitioner filed this action seeking a writ of habeas corpus on March 15, 2019. ECF No. 1. On June 6, 2019, Respondents filed a Return and Motion for Summary Judgment. ECF Nos. 10, 11. On October 17, 2019, in accordance with 28 U.S.C. § 636(b) and Local Civ. Rule. 73.02(B)(2)(c) (D.S.C.), United States Magistrate Judge Mary Gordon Baker issued a Report and Recommendation ("Report"). ECF No. 18. In the Report, the Magistrate Judge recommends granting Respondent's motion except as to one of Petitioner's ineffective assistance of counsel claims, in which Petitioner asserts trial counsel failed to object to improper bolstering testimony by an opposing forensic expert. Both parties timely filed objections to the Report. ECF Nos. 24, 25. For the reasons stated herein, the Court adopts in part and rejects in part the Report, and grants Respondent's motion.

**I.      Background**

Petitioner Millanyo Woody, proceeding *pro se* in this matter, was convicted after a 2013 jury trial in Greenville County for commission of a lewd act on a minor and second-degree criminal sexual conduct. Specifically, Millanyo Woody was convicted for sexually abusing his stepdaughter, who alleged abuse from age eight to eleven. No physical evidence adduced at trial

1

linked Petitioner to the crimes; however, Dr. Nancy Henderson testified as an expert that the victim sustained a hymenal tear consistent with penile penetration. Dr. Henderson testified as follows:

> Q: Do you have an opinion about how [the stepdaughter] got that injury?
>
> A: Well, I think based on the history that she had shared with me and the findings on her exam, including the lab work that we did, that this was due to a penetrating injury, and I felt it was consistent with the disclosure that she had made.
>
> Q: Of penile vaginal penetration?
>
> A: Yes ma'am.

ECF No. 10-4 at 176. A review of the record discloses that the defense theory focused not on disputing whether the victim had been sexually abused, but whether it was Petitioner who was the abuser. In her closing statement, Petitioner's attorney acknowledged, "Dr. Henderson has testified what the physical exam showed, a healed tear in the hymen at the nine o'clock position. So that is a fact. That is a fact for [the victim]. What is not a fact is that Millanyo Antonio Woody perpetrated this crime against her." ECF No. 10-4 at 219. Petitioner's counsel further argued, "yes, something happened to [the victim], but the question is who did it. And our answer is, it was not Millanyo Antonio Woody." ECF No. 10-4 at 226. As noted in the Report, defense counsel alluded to the victim's mother having multiple other partners at different times, whom she implied may have committed the abuse. *See id*. Similarly, the prosecutor acknowledged, "[w]hen it comes down to it, we are talking about credibility. Clearly something did happen to [the victim]." ECF No. 10-4 at 230. The jury ultimately convicted Petitioner, and he was sentenced to 177 months' imprisonment.

After unsuccessfully challenging his conviction on direct appeal and through post-conviction relief proceedings as detailed in the Report, *see* ECF No 18 at 2-5, Petitioner filed the

instant action asserting eight grounds for federal habeas relief. He asserts seven ineffective assistance of counsel claims and one due process claim. Petitioner's ineffective assistance claims assert that trial counsel (1) failed to move to quash indictments that were unconstitutionally overbroad and vague; (2) failed to advise Petitioner of the "precise terms of a plea deal"; (3) failed to make a *Batson* challenge during jury selection; (4) failed to seek jury charges for lesser included offenses; (5) failed to call a medical expert to challenge the state's medical evidence; (6) failed to advise Petitioner of an additional indictment; and (7) "fail[ed] to object or move for a mistrial in response to bolstering testimony" offered by Dr. Henderson. Petitioner's sole due process claim asserts the state "introduced a witness who used false, perjured and misleading testimony." ECF No. 1-2 at 8-14.

The Magistrate Judge concluded that Respondent is entitled to summary judgment on each claim except for Petitioner's ineffective assistance claim related to trial counsel's failure to object to Dr. Henderson's testimony. ECF No. 18 at 36. The Report recommends denying Respondent's motion on this ground and providing the parties an opportunity to submit additional filings in light of *Mangal v. Warden*, *Perry Corr. Inst.*, No. 6:18-cv-106-RBH, 2020 WL 42859 (D.S.C. Jan 3, 2020) (granting petition for writ of habeas corpus based on improper bolstering testimony by the same witness at issue in this action). On Petitioner's claim that his attorney failed to advise him of a plea offer, the Magistrate Judge concluded that although the claim is properly before the Court, it fails where the state PCR court credited counsel's testimony that she had discussed the plea offer with Petitioner. *See* ECF Nos. 10-4 at 364-65, 18 at 13. Finding nothing in the record to rebut the presumption of correctness afforded this credibility determination, *see Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013), the Report recommends granting Respondent summary judgment on this claim. ECF No. 18 at 12-13.

In Petitioner's objections to the Report, he disputes the recommendation that the parties be given an opportunity to submit additional filings on Petitioner's improper bolstering claim. ECF No. 24 at 2. Respondent, making several arguments addressed below, objects to the Report's conclusion that he is not entitled to summary judgment on the *Strickland* bolstering claim. ECF No. 25. With respect to Petitioner's claim that his attorney failed to advise him of a plea offer, Petitioner appears to argue that because the indictment upon which he was tried did not issue until September of 2012, counsel's PCR testimony that she provided and discussed a plea offer in June and July of 2012 cannot support the state court's factual finding that Petitioner was advised of the plea offer. ECF No. 24 at 2.

Because Petitioner cannot show prejudice resulting from trial counsel's performance, the Court believes Respondent is entitled to summary judgment on Petitioner's bolstering claim. Further, Petitioner's objection to the Report's conclusion on his claim that he was not advised of a plea offer does not negate the reasonableness of the PCR court's finding that he was. The Court finds no clear error in the remainder of the Report to which no party filed objections. Accordingly, the Report is adopted in part and rejected in part, and Respondent's Motion for Summary Judgment is granted.

## II.     Legal Standard

### A.     Review of a Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28

U.S.C. § 636(b)(1). In the absence of objections, the Court is not required to provide an explanation for adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

### B.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v.*

5

*Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

    **C.**    **Habeas Corpus**

Because Petitioner filed this action after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), review of his asserted grounds for habeas relief is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997). Under 28 U.S.C. § 2254(d), no petition for a writ of habeas corpus may be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A federal court's independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly is insufficient for the court to issue a writ of habeas corpus. *See Williams v. Taylor*, 529 U.S. 362, 410 (2000). "Rather, that application must also be unreasonable." *Id.* A state court's factual findings are presumed to be correct, and a petitioner may overcome this presumption only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, when a habeas petitioner seeks relief based on ineffective assistance of counsel "within the strictures of [28 U.S.C. § 2254], we must "give[ ] both the state court and the defense attorney the benefit of the doubt." *Thompson v. Gansler*, 734 F. App'x 846, 853 (4th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 15, (2013)).

6

### III. Discussion

#### A.     Communication of a Plea Offer

During Petitioner's PCR hearing, he testified that he did not have any discussions with his attorney about a plea offer. ECF No. 10-4 at 320. To the contrary, his attorney testified that she relayed the plea offer in June and July of 2012 and that Petitioner rejected the offer "on the spot." *Id.* at 352, 366. The PCR court credited trial counsel's testimony on the issue instead of Petitioner's. *Id.* at 366-67. This factual determination carries with it a presumption of correctness that may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner's objection appears to argue that he could not have been informed of a plea offer prior to the date of the indictment upon which he was tried. *See* ECF No. 24 at 2. Petitioner had been charged in 2010, however, with first-degree criminal sexual conduct, lewd act on a minor, and disseminating obscene material to a minor at the time trial counsel testified she discussed the plea offer with Petitioner. *See* ECF No. 10-9 at 7. It was only later, in September of 2012, that the state proceeded against Petitioner by direct indictment for the same acts that supported his original charges from 2010. The state represented to the trial court that it made a plea offer because, for some time, the victim's mother fell out of contact. *See* ECF No. 10-4 at 259. Accordingly, although Petitioner is correct that he was convicted of crimes charged in an indictment that postdated the plea discussions, *see id.* at 375, 377, that fact is irrelevant to the question of whether Petitioner was advised of an offer to plead to crimes previously charged. Because Petitioner has not shown with clear and convincing evidence that the state court's credibility determination on this claim was made in error, *see* 28 U.S.C. § 2254(e)(1), his objection is overruled.

**B.     Dr. Henderson's Testimony**

Dr. Henderson's testimony presents a closer question. As the Magistrate Judge noted in the Report, this Court recently granted habeas relief in a case in which Dr. Henderson provided arguably similar testimony. *See Mangal v. Warden, Perry Corr. Inst.*, No. 6:18-CV-00106-RBH, 2020 WL 42859 (D.S.C. Jan. 3, 2020). The record before the Court, however, demonstrates that Dr. Henderson's testimony bolstered the victim in this case, if at all, only on an issue that Petitioner's trial counsel already expressly conceded in both her opening and closing arguments to the jury. No evidence in the record shows trial counsel was deficient in deciding to make that concession. The fact that the victim may have been improperly bolstered on the conceded issue, therefore, cannot have been reasonably likely to affect the outcome of the trial. The Court accordingly believes Respondent is entitled to summary judgment.

    **i.     *Strickland* standard**

The Sixth Amendment right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish a violation of the Sixth Amendment's guarantees based upon the ineffective assistance of counsel, a party must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. A "strong presumption" exists that counsel's performance fell within a "wide range of reasonable professional assistance." *Id.* at 689. In addition, the "reasonable probability" contemplated by the second prong of this analysis is "a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* at 694. When a court evaluates an attorney's performance under the *Strickland* standard, it must "eliminate the distorting effects of hindsight, . . . reconstruct the circumstances of counsel's challenged conduct,

8

and . . . evaluate the conduct from counsel's perspective at the time." *Id.* at 690. As noted above, a *Strickland* claim brought within the confines of the AEDPA must overcome two levels of deference: the first is owed to trial counsel under *Strickland* itself, and the second is owed to the state court's application of *Strickland* under 28 U.S.C. § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (describing the test for AEDPA review of a *Strickland* claim as whether there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

> ii.   **Petitioner's *Strickland* claim implicates "clearly established federal law."**

Respondent objects to the Report, arguing that it ignores AEDPA's requirement that, under 28 U.S.C. § 2254(d)(1), habeas may be granted only where the state court's decision is an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." First, this objection ignores that the Report based its recommendation on the separate ground that habeas may also be granted where a state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Second, the objection independently lacks merit and is accordingly overruled.

"[C]learly established Federal law, as determined by the Supreme Court of the United States," for purposes of 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "The two-part test of *Strickland* that defendants must satisfy in order to prevail on an ineffective assistance of counsel claim unquestionably qualifies as 'clearly established' federal law under § 2254(d)." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005) (citing *Williams*, 529 U.S. at 391).

9

In *Frazer*, the Fourth Circuit resolved an issue similar to that raised by Respondent. The petitioner in *Frazer* asserted a *Strickland* claim in his petition for a writ of habeas corpus, arguing that he was prejudiced by counsel's failure to consult with him regarding a direct appeal. *Frazer*, 430 F.3d at 701. The Fourth Circuit noted that in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), which postdated the petitioner's conviction and upon which the district court relied in granting habeas relief, the United States Supreme Court held that counsel's duties under *Strickland* include discussing with his or her client whether to pursue an appeal. *Frazer*, 430 F.3d at 704 (citing *Flores-Ortega*, 528 U.S. at 477-80). A threshold issue in *Frazer* was accordingly whether the holding in *Flores-Ortega* was a new, non-retroactive principle upon which the petitioner was prohibited from collaterally attacking his conviction under *Teague v. Lane*, 489 U.S. 288 (1989). In holding that *Flores-Ortega* did not set forth a "new constitutional rule," the Fourth Circuit noted the *Strickland* test itself was "clearly established" federal law for purposes of 28 U.S.C. § 2254(d) and that the *Flores-Ortega* decision "simply crystalizes the application of *Strickland* to the specific context presented by [the defendant]'s claim." *Frazer*, 430 F.3d at 704-05.

*Frazer* thus seriously undermines Respondent's argument that Petitioner's claim fails where "the United States Supreme Court has never held that a physician who has examined a child sexual assault victim may not testify" as Dr. Henderson did in Petitioner's trial. "[R]ules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright line rule." *Williams*, 529 U.S. at 382; *see also Wright v. West*, 505 U.S. 277, 308-09 (1992) ("Where . . . a rule [is] designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent.") (Kennedy, J., concurring in judgment).

10

Because *Strickland* itself is clearly established federal law, Respondent's objection on this point is overruled.

> iii. Whether Dr. Henderson's testimony was objectionable cannot be resolved at this stage in light of the PCR court's findings of fact.

"The first prong [of *Strickland*]–constitutional deficiency–is necessarily linked to the practice and expectations of the legal community." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). A complaining party must demonstrate that counsel's representation "fell below an objective standard of reasonableness," judged in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688. Put differently, "[t]his requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

The first issue is whether Dr. Henderson's testimony was objectionable. If it was not, counsel's failure to object cannot have been deficient. The PCR court rested its decision that counsel was not ineffective for failing to object on *State v. Kromah*, 737 S.E.2d 490 (S.C. 2013) and in large part on a distinction between Dr. Henderson's qualified status as a "forensic examiner" as opposed to a "forensic interviewer."[1] In addition, the PCR court appears to have considered the issue of whether Dr. Henderson bolstered the victim's credibility "in general" or only on a particular allegation to be material. *See* ECF No. 10-4 at 368-69. The PCR court's order is reproduced in part:

---

[1] The *Kromah* court defined a "forensic interviewer" to be "a person specially trained to talk to children when there is a suspicion of abuse or neglect." *Kromah*, 737 S.E.2d 490, 499 (quoting *In re K.K.C.*, 728 N.W.2d 225, at *2 (Iowa Ct. App. 2006)). Dr. Henderson testified that she fits this definition rather precisely: "I am head of the division of forensic pediatrics, and so with that I'm involved with doing consults when there's a concern of child abuse . . . . evaluating children when there is a concern, as an outpatient, for abuse and neglect." ECF No. 10-4 at 160-61. The Court can identify no material distinction, on the question of whether Dr. Henderson's testimony was objectionable, based on whether she was qualified as a "forensic examiner," as the PCR court found, or a "forensic interviewer."

11

> Dr. Henderson's testimony that her findings on examination were consistent with the description the child had made as to penile vaginal penetration is a statement that the child victim was truthful as to that issue. While this testimony indicates that the interviewer believed the child's allegations of penile penetration, the testimony does not vouch for the child's believability in general. While this appears to be the exact type of testimony *Kromah* warns against, as set forth below, the Court finds that Dr. Henderson's testimony did not bolster the child victim's testimony.
>
> Trial counsel testified she did not object to the testimony . . . simply because she did not think it was objectionable. In this case Dr. Henderson testified as a medical doctor. While she testified basically as a forensic expert, she was not testifying as a forensic interviewer . . . . Dr. Henderson's testimony bolsters the victim's testimony only as to whether or not the victim's vaginal area showed signs of penile intrusion. Dr. Henderson objectively found evidence of penile/vaginal penetration. She testified that such finding was consistent with the victim's testimony that she had been so penetrated.

ECF No. 10-4 at 368-69. In *State v. Kromah*, the South Carolina Supreme Court held that testimony of a "forensic evaluator"–who was technically qualified as a "forensic interviewer"– improperly bolstered the credibility of a child victim's statements. 737 S.E.2d at 495, 499-500. The expert testified at trial that "[b]ased on the interview that I conducted, as well as information provided by law enforcement and the child protective services worker, I made a decision that the child had given [a compelling finding of child physical abuse]." *Id.* at 496. While the *Kromah* court's holding of inadmissibility applied to the testimony of a "forensic interviewer," the court also reiterated, "experts . . . may not offer an opinion regarding the credibility of others." 737 S.E.2d at 499. "Specifically, it is improper for a witness, [i.e., any witness] to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *Id.* at 500 (citation omitted); *see also Thompson v. State*, 814 S.E.2d 487, 491 (S.C. 2018) ("[N]o witness may give an opinion as to whether the victim is telling the truth.") (quotation and citation omitted).

Based on *Kromah*, PCR court found the testimony at issue did not improperly bolster the victim's credibility, *i.e.*, that the testimony was not objectionable in the first instance. ECF No. 10-4 at 369. Respondent has not identified, and the Court cannot locate, any authority for the

12

proposition that bolstering testimony is only objectionable as such if it attests to another witness' believability "in general" instead of as to a particular issue. Indeed, in *Kromah*, the witness testified that, based on her interview with the victim, she made a finding on the sole issue of child physical abuse. That testimony was objectionable. "[A] forensic interviewer should avoid . . . any statement to indicate to a jury that the interviewer believes the child's *allegations in the current matter*." *Kromah*, 737 S.E.2d at 500 (emphasis added). Multiple factual findings on which the PCR court rested its ultimate conclusion dictate the opposite result on the question of objectionability. Specifically, the court found that Dr. Henderson's testimony was "a statement that the child victim was truthful as to that issue." In addition, Dr. Henderson's testimony "indicate[d] that [she] believed the child's allegations of penile penetration."[2]

On the issue of admissibility, Respondent also relies on *State v. Perry*, 803 S.E.2d 899 (S.C. Ct. App. 2017), which has been reversed on other grounds since the parties filed their objections. No. 2017-001965, 2020 WL 2179238 (S.C. May 6, 2020). His reliance is misplaced. The testimony at issue in *Perry* proceeded as follows:

> Q:     [W]hat were the findings of your examination?

---

[2] That *Kromah* cannot be said to control Petitioner's Sixth Amendment claim is subject, however, to the well-established principle of federalism that an adequate and independent resolution of a claim on state law grounds is not subject to review in federal court. *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) (citations omitted). To avoid review, however, the ground must be "independent of the federal question." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). "That [bolstering] evidence is improper, in both state and federal trials, can hardly be disputed." *Snowden v. Singletary*, 135 F.3d 732, 738 (11th Cir. 1998) (instructing trial court to grant habeas petition where a witness testified that 99.5% of children tell the truth and noting that "[v]ery rarely will a state evidentiary error rise to a federal constitutional error," however, centrality of victim witness' statements to the outcome of trial rendered admission of bolstering evidence a violation of due process). "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. People of State of California*, 314 U.S. 219, 236 (1941). In turn, "[a] fundamental premise of our criminal trial system is that 'the jury is the lie detector.'" *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (quoting *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973)), *cert. denied*, 416 U.S. 959 (1974)). "We recognize the general rule, of course . . . that the question of the credibility of witnesses is one for the jury alone." *Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 216 (1931).

> A: She had a little bit of discharge . . . . [T]he rest of her exam was normal.
>
> Q: And what is–what does normal mean?
>
> A: Normal means that there were no tears, no scars, . . . and there were no specific findings on her exam that in and of itself would have linked to allegations of abuse. But in light of what she had shared with me and, as I mentioned, finding a normal exam is something quite common and not surprising in this particular case.
>
> Q: So in your opinion, were your findings consistent with Daughter Three having experienced sexual abuse?
>
> A: Yes.

803 S.E.2d at 910. The South Carolina Court of Appeals held this testimony to be permissible because, although "when considered in isolation, [the] response could be interpreted as she believed [the victim]'s allegations and, therefore, also believed [the victim] could have been sexually abused," the "most likely interpretation of Dr. Henderson's response to the 'consistent with sexual abuse' question is that normal examination results do not rule out sexual assault in delayed disclosure cases." *Id.* at 911. In this case, unlike *Perry*, Dr. Henderson expressly testified that her examination was consistent with what the victim told her, not that it was consistent with sexual abuse.

In *Mangal v. State*, 781 S.E.2d 732 (S.C. Ct. App. 2015) ("*Mangal I*"), a decision which, like *Perry*, has been reversed on grounds unrelated to bolstering testimony challenges, *see Mangal v. State*, 805 S.E.2d 568 (S.C. 2017), the expert testified that "[b]ased on the history that [the victim] shared with me and based on my examination I felt that it was consistent . . . that she had been abused." *Mangal I*, 781 S.E.2d at 734. While this testimony is akin to that in *Perry*, the expert testified further that she assumed the victim was telling the truth when making her evaluation. *Mangal I*, 781 S.E.2d at 734 ("Based on the way she shared it and all the information that she shared, [I assumed the victim's information was true]."). The South Carolina Court of

14

Appeals "believe[d] there is no other way to interpret these comments other than to mean that [the expert] believed Victim was truthful." *Id.* at 737.

The PCR court in this case made explicit factual findings that Dr. Henderson's testimony (1) was "a statement that the child victim was truthful" as to the issue of penile vaginal penetration; (2) "confirmed the child's oral statements" to Dr. Henderson; and (3) "bolsters the victim's testimony" as to whether the victim's vaginal area showed signs of penile intrusion. ECF No. 10-4 at 368-69. These findings distinguish this case from *Perry*, where the court stated the "most likely interpretation" of the expert's testimony had nothing to do with the truthfulness of the victim. *See Perry*, 803 S.E.2d at 911. The PCR court's order further likens this case to *Mangal I*, where the PCR court acknowledged Dr. Henderson's testimony amounted to a statement that the victim was truthful, albeit only with regard to the issue of penile vaginal penetration. The foregoing leads the Court to conclude that the testimony could have been objected to under the federally-recognized and "fundamental premise" of criminal trials that "the jury is the lie detector." *Scheffer*, 523 U.S. at 313 (quotation omitted).

Respondents also argue that Dr. Henderson's testimony is necessarily admissible under Rule 803(4), SCRE, which excludes from the general rule rendering hearsay inadmissible "[s]tatements made for the purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment . . . ." This argument misses the mark. That a hearsay statement may be admissible under an exception is not sufficient to render that statement categorically admissible and cannot render admissible an expert's testimony that bolsters such a statement in the face of an independent rule to the contrary. *Cf. Hungry Wolf/Sugar & Spice, Inc. v. Langdeau*, 791 S.E.2d 850, 852 (Ga.

App. 2016) (vacating judgment where trial court considered only whether a document satisfied a hearsay exception, but not whether the document was also authenticated: meeting the hearsay exception was "a necessary, but insufficient, prerequisite for admitting the [document]."). This objection is overruled.

For the foregoing reasons and viewing the evidence in a light most favorable to Petitioner, the Court is unable to conclude that the state court decision that Dr. Henderson's testimony was not objectionable is based on a reasonable determination of the facts in light of the evidence presented in state court proceedings: The PCR court made findings of fact that Dr. Henderson's testimony constituted a statement indicating the victim's "truthfulness" and "bolstered" her testimony.

### iv.     The state court record forecloses the conclusion that trial counsel's failure to object was the product of any strategy.

The next question is whether trial counsel had a strategically reasonable basis for failing to object. As the PCR court noted, "[t]rial counsel testified she did not object to the testimony . . . simply because she did not think it was objectionable." ECF No. 10-4 at 368. The PCR court made no finding, as Respondent suggests, "that trial counsel had strategically decided not to object." *See* ECF No. 25 at 4. Trial counsel's testimony was simply that she did not object because she did not perceive the testimony to be objectionable: "If I didn't object I didn't think it–I didn't perceive it to be bolstering." ECF No. 10-4 at 349. As noted above, the PCR court specifically found that Dr. Henderson's testimony "indicate[d] that [she] believed" the victim on the issue of sexual penetration. During the PCR hearing, trial counsel testified that if Dr. Henderson "testif[ied] that she believed the victim," she would have lodged a bolstering objection. ECF No. 10-4 at 357. Accordingly, on the record, the Court agrees that trial counsel's

failure to object is not itself attributable to any informed strategic decision and could constitute deficient performance under *Strickland*'s first prong.

> v.  **Petitioner cannot show prejudice, because the state court reasonably found that bolstering was limited to a singular issue that trial counsel independently conceded. Petitioner cannot show counsel's decision to concede the issue to which Dr. Henderson bolstered the victim was outside the wide range of reasonable professional assistance.**

As stated above, to show prejudice, Petitioner must show that, but for trial counsel's error, there exists "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In making this showing, Petitioner need not demonstrate that his counsel's unprofessional errors more likely than not altered the outcome of the case. *Id.* at 693. However, it is also "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* Instead, trial counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Petitioner's trial counsel expressly conceded the issue of whether Petitoner's stepdaughter had been sexually abused. *See* ECF No. 10-4 at 219 ("Now, let me get this out front . . . . Dr. Henderson has testified what the physical exam showed, . . . . So that is a fact. That is a fact for [the victim]."). Instead of focusing on that issue, she formed the theory of the defense around what she rather clearly considered to be the state's inability to prove beyond a reasonable doubt that it was Petitioner who abused the victim. *Id.* ("What is not a fact is that Millanyo Antonio Woody perpetrated this crime against her . . . . *Yes, something did happen to [the victim]*, but it was not done by Millanyo Antonio Woody.") (emphasis added).

Nothing in the record tends to show trial counsel unreasonably decided to concede the issue on which Petitioner asserts Dr. Henderson bolstered the victim's allegations, *i.e.*, penile vaginal penetration.[3] Accordingly, Petitioner cannot establish prejudice at this stage. The factual findings in the PCR court's order, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), establish that although Dr. Henderson's testimony "bolstered" the victim's statements and amount to testimony that the victim was "truthful," ECF No. 10-4 at 368-69, it only bolstered the victim on an issue that trial counsel had conceded.

The Report acknowledges the *Strickland* test consists of separate analyses concerning deficient performance and prejudice. ECF No. 18 at 29. The circumstances of this case, however, show the questions are inextricably related. To succeed on his underlying *Strickland* claim, Petitioner must show (1) Dr. Henderson's testimony was objectionable; (2) trial counsel was objectively unreasonable in failing to object to it; and (3) but for the introduction of Dr. Henderson's objectionable testimony, there is a reasonable probability Petitioner would have prevailed at trial. It is the objectively unreasonable decision of counsel that must be reasonably likely to have *caused* a particular outcome in the proceeding.

The testimony at issue was objectionable, if at all, because it had the tendency to improperly influence the jury's factual determination of whether *someone* sexually penetrated the victim. Unlike in *Mangal*, trial counsel conceded before the jury that *someone* indeed had. In her opening statement, Petitioner's counsel said to the jury, "[the state] has told you that Dr. Henderson will testify that [the victim] had a tear or injury. The question is who, how?" In

---

[3] Relatedly, Petitioner did assert in this action that counsel was ineffective for failing to engage an expert witness to rebut Dr. Henderson's testimony; however, this claim is procedurally defaulted, and Petitioner makes no argument as to why the default should be excused. *See* ECF No. 18 at 18-19. Petitioner did not object to the Report's conclusion on this matter. ECF No. 24. Further, as the Magistrate Judge noted, the record contains no evidence one way or the other on the question of whether counsel investigated or consulted a defense expert. ECF No. 18 at 20.

closing, she conceded, "[s]o, yes, something happened to [the victim]. But the question is who did it." ECF No. 10-4 at 226. Whether this raises *Strickland* concerns is a question of whether trial counsel was objectively reasonable in conceding the issue. Nothing in the record suggests she wasn't or that contesting the issue would have been fruitful.[4] The prejudice prong, then, asks whether the jury would have returned a different verdict but for the admission of Dr. Henderson's testimony. The testimony may have improperly persuaded the jury to believe that the victim showed physical signs of penile vaginal penetration. If trial counsel was not objectively unreasonable in deciding to concede that issue, however, the "confidence in the outcome" of the trial simply cannot be undermined under *Strickland*'s prejudice prong, where the outcome of the trial is not likely to have been different.

For the foregoing reasons, because Petitioner is unable to establish that counsel's failure to object to Dr. Henderson's testimony was reasonably likely to have influenced the outcome of the trial, his underlying *Strickland* claim fails.

## IV.    Conclusion

After a thorough review of the Petition, the record, the Report, the applicable law, and the arguments submitted by the parties, the Court adopts in part and rejects in part the Report, GRANTS Respondents' Motion for Summary Judgment, ECF No. 11, and DISMISSES the Petition, ECF No. 1, with prejudice.

---

[4] In general, it appears reasonable for a criminal defendant not to contest facts where the evidence against him or her bearing on those facts is strong–for the sake of preserving credibility–and to focus instead on those critical vulnerabilities perceived in the prosecution's case. *Cf. Florida v. Nixon*, 543 U.S. 175 (2004) (acknowledging potentiality of reasonableness to concede guilt in capital case: "[defense counsel] concluded that his best course would be to concede Nixon's guilt, thereby preserving credibility for penalty-phase evidence . . . ."). Here, the record contains no indication that trial counsel should not have made the concession. Nothing in the record can establish whether counsel did or did not have a basis for deciding to concede that *someone* committed the crime against Petitioner's stepdaughter and to instead focus the case on the issue of identity. Petitioner bears the ultimate burden, and he fails to create a genuine issue regarding counsel's reasonableness in making the concession.

It is further ordered that a certificate of appealability is GRANTED under 28 U.S.C. § 2253(c)(2) on Petitioner's claim that he was denied effective assistance of counsel by reason of trial counsel's failure to object to allegedly bolstering testimony, because reasonable jurists could debate whether the Petition should have been resolved in a different manner on this ground for relief. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

       IT IS SO ORDERED.

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge

June 19, 2020

Florence, South Carolina