IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Millanyo Woody,<br><br>                        Petitioner,<br><br>v.<br><br>Jonathan Nance, Warden of Tyger River Correctional Institution,[1]<br><br>                        Respondent. | C/A No. 2:19-cv-785-SAL<br><br><br>**ORDER** |

Millanyo Woody ("Petitioner"), a state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in March 2019. [ECF No. 1.] In 2020, this court reviewed a Report and Recommendation ("Report") issued by United States Magistrate Mary Gordon Baker,[2] where she recommended granting, in part, a motion for summary judgment filed by Respondent and seeking further briefing on a discrete issue related to one of Petitioner's ineffective assistance of counsel claims. [ECF No. 18.] Ultimately, the court granted Respondent's motion for summary judgment. [ECF No. 29.]

Petitioner filed a notice of appeal in the Fourth Circuit, and the case was remanded to this court to determine whether Petitioner's appeal was timely. *See* ECF No. 58. To that end, the court conducted an evidentiary hearing. [ECF No. 79.] Petitioner's own testimony at the hearing foreclosed any finding that his appeal could have been timely, and Petitioner, now represented by

---

[1] The Clerk of Court shall terminate "Tucker, Warden" and add "Jonathan Nance, Warden of Tyger River Correctional Institution" as the Respondent. *See* 28 U.S.C. §§ 2242, 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) ("[I]n habeas challenges to present physical confinement— 'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"); Rules Governing Section 2254 Cases 2(a).
[2] The Report was made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.).

1

counsel, conceded as much. *See id.* Nevertheless, the court granted relief under Fed. R. Civ. P. 60(b), reconsidering and vacating its earlier order granting Respondent's motion for summary judgment. *Id.*

Having vacated its previous order, the court reviews anew Respondent's motion for summary judgment and the magistrate judge's Report. [ECF Nos. 11, 18.] For the reasons outlined below, the court adopts the Report and grants Respondent's motion for summary judgment.

## BACKGROUND

Following a jury trial in 2013, Petitioner was convicted in state court for committing a lewd act on a minor and second-degree criminal sexual conduct. Specifically, he was convicted of sexually abusing his stepdaughter, who alleged that the abuse occurred between the ages of eight and eleven. The victim testified that Petitioner touched her sexually, licked her, and penetrated her vagina with his penis. Petitioner denied these allegations. No physical evidence introduced at trial directly linked Petitioner to the crimes. But as part of its case, the State presented Dr. Nancy Henderson, who testified as an expert witness that the victim sustained a hymenal tear consistent with penile penetration.

A review of the trial record reveals that the defense strategy did not dispute the victim had been sexually abused, but whether Petitioner was the abuser. In her closing statement, Petitioner's attorney acknowledged, "Dr. Henderson has testified what the physical exam showed, a healed tear in the hymen at the nine o'clock position. So that is a fact. That is a fact for [the victim]. What is not a fact is that Millanyo Antonio Woody perpetrated this crime against her." [ECF No. 10-4 at 219.] Petitioner's counsel further argued, "yes, something happened to [the victim], but the question is who did it. And our answer is, it was not Millanyo Antonio Woody." [ECF No. 10-4 at 226.] As noted in the Report, trial counsel alluded to the victim's mother having multiple other

2

partners at different times, whom she implied may have committed the abuse. *See id*. Similarly, the prosecutor acknowledged, "[w]hen it comes down to it, we are talking about credibility. Clearly something did happen to [the victim]." [ECF No. 10-4 at 230.] The jury ultimately convicted Petitioner, and he was sentenced to 177 months' imprisonment.

After unsuccessfully challenging his conviction on direct appeal and through post-conviction relief ("PCR") proceedings in state court, *see* ECF No 18 at 2–5, Petitioner filed this action asserting eight grounds—seven ineffective assistance of counsel claims and one due process claim—for federal habeas relief. Petitioner's Ground One sets forth his ineffective assistance claims as follows: (a) trial counsel failed to move to quash indictments that were unconstitutionally overbroad and vague; (b) trial counsel failed to advise Petitioner of the "precise terms of a plea deal"; (c) trial counsel failed to make a *Batson* challenge during jury selection; (d) trial counsel failed to seek jury charges for lesser included offenses; (e) trial counsel failed to call a medical expert to challenge the state's medical evidence; (f) trial counsel failed to advise Petitioner of an additional indictment; and (g) trial counsel "fail[ed] to object or move for a mistrial in response to bolstering testimony" offered by Dr. Henderson. [ECF No. 1-2 at 8–13.] Ground Two, Petitioner's sole due process claim, asserts the state "introduced a witness who used false, perjured and misleading testimony." *Id.* at 14.

In her Report, the magistrate judge concluded that Respondent is entitled to summary judgment on each claim except for Petitioner's ineffective assistance claim related to trial counsel's failure to object to Dr. Henderson's testimony. [ECF No. 18 at 36.] As to that ground, rather than granting summary judgment, the magistrate judge recommended allowing further briefing and giving the parties an opportunity to submit additional filings in light of *Mangal v. Warden, Perry Corr. Inst.*, No. 6:18-cv-106-RBH, 2020 WL 42859 (D.S.C. Jan 3, 2020) (granting

petition for writ of habeas corpus based on improper bolstering testimony by the same witness at issue here).

In February 2020, both sides submitted objections to the Report. As detailed above, the court initially granted Respondent's motion for summary judgment. But that order was later vacated following remand and a motion for reconsideration filed by Petitioner. The court directed the parties to brief an issue about counsel's failure to object to Dr. Henderson's testimony, and the parties have now completed that briefing—essentially, the briefing originally recommended by the magistrate judge. *See* ECF Nos. 84, 85, 86.

## LEGAL STANDARDS

### I.     Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then reviews de novo only the portions of the Report to which a party has specifically objected. *Id.* An objection is sufficiently specific if it reasonably alerts the court to a party's true objection to the Report. *Id.* at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If instead a litigant objects only generally, the court reviews the Report for clear error and need not provide an explanation for adopting the recommendation. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[i]n the absence of specific

4

objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009) (emphasis in original).

**II.     Review of a Motion for Summary Judgment**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of proving he is entitled to summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the nonmoving party must then show that a material fact is genuinely disputed. In determining whether of a genuine issue of material fact exists, the court must draw all justifiable inferences in favor of the nonmoving party. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Review of a Petition for Writ of Habeas Corpus**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a court cannot grant an application for a writ of habeas corpus with respect to any claim adjudicated on the merits in a state court proceeding unless the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of

5

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). The AEDPA standard of review is "highly deferential" to the state court. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). To obtain relief, "a state prisoner must show that the state court's ruling on the claim presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Moreover, the state court's factual findings are presumed to be correct, and the petitioner must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### IV. Ineffective Assistance of Counsel

Most of Petitioner's habeas grounds allege ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, Petitioner must show (1) trial counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Id.* at 687. Under the first prong, Petitioner must prove that counsel's representation fell below an objective standard of reasonableness "due to serious errors." *Id.* at 687–88. To satisfy the second prong, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

On habeas review, ineffective assistance claims—already subject to a deferential standard—are further constrained by the heightened deference of § 2254(d). *Thompson v. Gansler*, 734 F. App'x 846, 853 (4th Cir. 2018); *see also Harrington*, 562 U.S. at 101 (deeming the standards "doubly" deferential "in tandem"). The relevant question is not whether counsel's actions were reasonable but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. As the Supreme Court has noted, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356,

371 (2010). And proving that a state court unreasonably applied *Strickland* under § 2254(d) is even more difficult. *Harrington*, 562 U.S. at 105. A federal habeas court must afford deference to both the state court and defense counsel. *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

## DISCUSSION

Having reviewed the record, the briefs of the parties, and the Report, the court finds the magistrate judge correctly applied the relevant legal standards under § 2254. The magistrate judge recommends granting Respondent's motion for summary judgment, concluding that the state court's application of federal law was reasonable. [ECF No. 18.] The court agrees with this analysis and adopts the Report as to Ground One, claims (a) through (f), and Ground Two.[3] Petitioner does not object to the recommended disposition of Ground One, claims (a), (c), (d), (e), and (f), or Ground Two. *See* ECF No. 24. Having reviewed those portions of the Report for clear error, the court finds none and adopts the magistrate judge's recommendation as to those claims.

Two contested claims remain: (1) that trial counsel was ineffective for failing to communicate the terms of a plea offer and (2) that trial counsel was ineffective for failing to object to Dr. Henderson's testimony. The court addresses each in turn.

**I.      Ground One, Claim (b) – Failure to Communicate Plea Offer**

Petitioner contends that trial counsel was ineffective for failing to communicate the precise terms of a plea offer before trial. [ECF No. 1-2 at 8.] As detailed in the Report, this claim was presented to and ruled on by the PCR court and later raised on appeal. *See* ECF No. 18 at 12–13. At the PCR hearing, Petitioner testified that he had no discussions with his attorney about a plea offer. [ECF No. 10-4 at 320.] But trial counsel testified that she relayed the plea offer in June and

---

[3] As set forth in the Report, Ground One, claims (c), (d), (e), and (f), and Ground Two are all procedurally defaulted. *See* ECF No. 18 at 14–23, 33–35. And the state court's rejection of Ground One, claim (a), was not unreasonable or inconsistent with federal law. *See id.* at 10–12.

7

July of 2012, and Petitioner rejected it "on the spot." *Id.* at 352, 366. The PCR court credited trial counsel's testimony over Petitioner's and denied the claim. *Id.* at 366–67. This factual determination is entitled to a presumption of correctness, which may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.").

In his objections, Petitioner argues that he could not have been informed of a plea offer before the indictment on which he was tried. *See* ECF No. 24 at 2. But the date of the formal indictment is immaterial to this analysis. The record reflects that in 2010, Petitioner was charged with first-degree criminal sexual conduct, lewd act on a minor, and disseminating obscene material to a minor. *See* ECF No. 10-9 at 7. Thus, as trial counsel testified, Petitioner was facing charges when the plea offer was conveyed.[4] In September 2012, the State indicted Petitioner for the same acts underlying the original 2010 charges. While Petitioner correctly notes that he was convicted of crimes charged in an indictment issued after the plea discussions, *see* ECF No. 10-4 at 375, 377, this does not constitute clear and convincing evidence sufficient to overturn the state court's credibility findings. Accordingly, the court overrules Petitioner's objection and grants Respondent's motion for summary judgment on this claim.

## II.     Ground One, Claim (g) – Trial Counsel's Handling of Dr. Henderson's Testimony

Petitioner alleges that trial counsel was ineffective for failing to object to Dr. Henderson's

---

[4] The State represented to the trial court that it made a plea offer because the victim's mother fell out of contact for some time. *See* ECF No. 10-4 at 259.

8

testimony. This argument was presented to the PCR court, which found that trial counsel was not ineffective because Dr. Henderson's testimony was not improper under South Carolina law. *See* ECF No. 10-4 at 367–69. Petitioner, however, contends that the PCR court erred in its finding, arguing that the testimony constituted improper bolstering under state law, that trial counsel was deficient in failing to object, and that he was prejudiced as a result. [ECF No. 85.]

      A.      **Dr. Henderson's Trial Testimony**

The State called Dr. Henderson as an expert witness in child abuse pediatrics. [ECF No. 10-4 at 165.] She examined the victim twice—once in May 2006 and again in May 2010. *Id.* at 166. Dr. Henderson described her evaluation process, which included a physical examination and discussions with the child and the adult who accompanied the child. *Id.* at 166–68.

Dr. Henderson testified that, during the 2006 examination, the victim reported that someone had touched her genital area while she was showering and had also touched her over her clothing. *Id.* at 169. The physical examination at that time was normal. *Id.*

In the 2010 examination, however, the victim disclosed that the person "lick[ed] her all over her body[,]" that there was "penile/vaginal penetration[,]" that she experienced some bleeding related to that incident, that she had been shown pornography, and that she had been offered money. *Id.* at 169–70. Dr. Henderson observed a healed tear on the victim's hymen, which had not been present in 2006, and testified that such tears are typically caused by penetration. *Id.* at 170–71. While she could not determine when the injury occurred, she confirmed it had healed by 2010. *Id.* at 171, 173. At the end of her testimony, the prosecution asked Dr. Henderson her opinion on the cause of the injury:

    Q:    Do you have an opinion about how [the victim] got that injury?

    A:    Well, I think based on the history that she had shared with me and the findings on her exam, including the lab work that we did, that this was due

> to a penetrating injury, and I felt it was consistent with the disclosure that she had made.
>
> Q:   Of penile vaginal penetration?
>
> A:   Yes ma'am.

*Id.* at 176.

On cross-examination, Dr. Henderson confirmed that in 2010, the victim tested positive for trichomoniasis, a sexually transmitted disease, along with bacterial vaginosis and a yeast infection, which are not sexually transmitted. *Id.* at 177. She also reiterated that she could not pinpoint when the hymenal tear had occurred beyond confirming that it had happened sometime between 2006 and 2010. *Id.* at 178.

**B.    PCR Review of Alleged Bolstering by Dr. Henderson**

During PCR proceedings, Petitioner claimed that trial counsel was ineffective for failing to object to Dr. Henderson's testimony as bolstering. At the PCR hearing, trial counsel was questioned on this issue:

> Q.   . . . . There was a question that he has in regards to whether or not Dr. Henderson bolstered the testimony of the minor child. . . . And some testimony about whether or not after a review—her review—an interview is consistent with some type of penile penetration. During the trial you didn't object. Was there any reason for that or do you remember anything surrounding that?
>
> A.   If I didn't object I didn't think it—I didn't perceive it to be bolstering. . . . She was, like you said, the medical doctor examining a patient and describing the injuries or tears that she saw and giving information about what would it be consistent with.
>
> Q.   Okay. So it was your position that you would object if you felt it was objectionable and you just felt at that time it wasn't?
>
> A.   Correct.

10

[ECF No. 10-4 at 350.] Trial counsel further testified that she would have objected if Dr. Henderson had ever testified "that she believed that the victim was abused" or "that she believed the victim." *Id.* at 357.

The PCR court found trial counsel was not ineffective for failing to object. *Id.* at 367–69. Reviewing Dr. Henderson's testimony under applicable South Carolina law, the PCR court cited *State v. Kromah*, 737 S.E.2d 490 (S.C. 2013), which identifies improper bolstering as including: (1) statements indirectly vouching for a child's believability and (2) statements indicating to a jury that the expert believes the child's allegations. [ECF No. 10-4 at 368.] The PCR court reasoned,

> Dr. Henderson's testimony that her findings on examination were consistent with the description the child had made as to penile vaginal penetration is a statement that the child victim was truthful as to that issue. While this testimony indicates that the interviewer believed the child's allegations of penile penetration, the testimony does not vouch for the child's believability in general. While this appears to be the exact type of testimony *Kromah* warns against, as set forth below, the Court finds that Dr. Henderson's testimony did not bolster the child victim's testimony.

*Id.*

While acknowledging that Dr. Henderson's testimony linked the victim's medical findings to her allegations of penile penetration, the PCR court found that this did not constitute improper bolstering because Dr. Henderson did not affirm the victim's overall credibility. *Id.* at 369. The PCR court explained that the expert testimony here was not so much an endorsement of the patient's credibility as it was confirmation of a correlation between the physical findings and patient history. "The testimony is not that the victim was believable, but rather that the physical exam confirmed the child's oral statements to the doctor as part of her medical history." *Id.* Thus, the PCR court concluded that trial counsel was not deficient in failing to object.

11

This issue was later raised in a *Johnson*[5] petition before the state court of appeals, but the petition for certiorari was denied.

### C.   Federal Habeas Review

Although Petitioner raises the same ineffective assistance claim as in state court, this court's inquiry under § 2254 is notably different from the state court's. The key question is not whether trial counsel was ineffective but whether the PCR court's determination was either "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" or "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254. With this framework, the court focuses on the PCR court's analysis and conclusions

#### 1.   Whether Dr. Henderson's Testimony Was Improper

The PCR court found that Dr. Henderson's testimony was not bolstering under state law. [ECF No. 10-4 at 369.] Petitioner disagrees while Respondent supports the PCR court's conclusion. [ECF Nos. 85 at 2–4; 84 at 4–8.] But whether testimony constitutes improper bolstering is a matter of state law, which federal habeas courts generally do not review. *Jeffery v. Ames*, 2019 WL 8137165, at *23 (S.D.W. Va. Nov. 22, 2019) (denying § 2254 relief where allegedly improper bolstering testimony was permitted under state law and noting "[w]hen considering federal habeas corpus petitions involving state evidentiary rulings, federal courts do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings

---

[5] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), is the PCR appeal corollary to an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). It allows the South Carolina appellate court to review all of the issues raised to and ruled on by the PCR court. Although this issue was expressly raised in the petition, appellate counsel also petitioned to be relieved as counsel, affirming while he had "briefed an arguable legal issue" from the PCR process, "in his opinion, the appeal [was] without legal merit sufficient to warrant a new trial." [ECF No. 10-8 at 8.]

were so extreme as to result in a denial of a constitutionally fair proceeding" (internal quotations omitted)); *see also Parker v. Scott*, 394 F.3d 1302, 1310 (10th Cir. 2005) (noting the parties had not cited to any published case holding that vouching testimony itself violates the Due Process Clause though it may be error under evidentiary rules).

By raising this issue in habeas, Petitioner effectively seeks federal reconsideration of a state-law determination. And, under § 2254, this court lacks authority to do so absent unreasonable factual findings or an unreasonable application of federal law. *See Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993) ("It has been well settled in this circuit for years that a claim about the admissibility of evidence under state law is rarely a claim upon which federal habeas corpus relief can be granted.").

Petitioner argues the PCR court's conclusions were unreasonable "because Henderson's testimony bolstered the victim's credibility." [ECF No. 85 at 8.] But Petitioner's argument primarily challenges the PCR court's interpretation of state evidentiary law, not its factual determination. The PCR court acknowledged that Dr. Henderson's testimony was consistent with the victim's statement about penetration but found it did not improperly bolster her credibility under state law. Whether the PCR court misapplied state law is not an issue for federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules.").

### 2. Whether Trial Counsel Was Deficient

Petitioner's claim necessarily fails if the PCR court correctly applied state law. But even if Dr. Henderson's testimony was improper under state law, that does not automatically render trial counsel ineffective. Under *Strickland,* a defendant is not entitled to error-free representation. *See Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978) ("[E]ffective representation is not synonymous with errorless representation."). Counsel is presumed to have provided competent assistance. *Strickland*, 466 U.S. at 689–90 (instructing reviewing courts to presume counsel's conduct falls within the "wide range" of competent assistance); *Harrington*, 562 U.S. at 110 ("*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."). Here, trial counsel testified that she would have objected if she believed Dr. Henderson's testimony was improper under the law. She did not perceive it as such. The PCR court agreed.[6] These determinations are entitled to deference and preclude habeas relief.

### 3. Distinguishing the *Mangal* Case

In January 2020, the magistrate judge recommended further briefing on *Mangal v. Warden*, 6:18-cv-00106-RBH, 2020 WL 42859 (D.S.C. Jan. 3, 2020), where a habeas court granted relief on a similar ineffective assistance claim. The court has carefully compared *Mangal* to this case and reviewed the parties' briefing. The district court opinion in *Mangal* adopted a Report and Recommendation by a magistrate judge without objections from the parties, and that Report and Recommendation contains the majority of the relevant analysis. *See Mangal v. Warden*, 6:18-106-

---

[6] For that matter, arguably neither did appellate counsel or the state appellate court find the testimony improper based on the record. Logically, this court would be hard-pressed to find trial counsel deficient for failing to object to Dr. Henderson's testimony when, years later, a state court reviewed the same testimony and concluded it did not violate state law. Again, this issue was raised in Petitioner's PCR appeal, and the state appellate court did not grant certiorari to correct any error of state or federal law.

RBH-KFM, 2019 WL 7461668 (D.S.C. Dec. 18, 2019). After careful review *Mangal* is distinguishable.

While both cases involve testimony by Dr. Henderson regarding her examination of an alleged child abuse victim, there are key differences in the substance and nature of that testimony. In *Mangal*, Dr. Henderson went beyond simply describing her findings and provided an express opinion about the victim's truthfulness. Specifically, she testified, not merely that her examination was consistent with a report of vaginal-penile penetration, but that "[b]ased on the history that she shared with me and based on my examination I felt that it was consistent with a, that she had been abused." *Mangal*, 2019 WL 7461668, at *16. She further testified that, in her opinion, the victim had been sexually abused. *Id.* Additionally, when asked *whether she assumed the victim's statements were true*, Dr. Henderson responded, "'Based on the way she shared it and all the information that she shared, yes . . . .'" *Id.* at *17.

In *Mangal,* the state court expressly ruled that Dr. Henderson's testimony constituted improper vouching: "'There is no other way to interpret these comments other than to mean that Dr. Henderson believed [the victim] was truthful.'" *Id.* at *17 (quoting *Mangal v. State*, 781 S.E.2d 732, 736 (S.C. Ct. App. 2015)).[7] Here, by contrast, the PCR court ruled that Dr. Henderson's testimony was *not* vouching. Under § 2254, this court must defer to the PCR court's findings unless they involve unreasonable factual findings or an unreasonable application of federal law.

*Mangal* does not control, and Petitioner fails to demonstrate that the PCR court's decision was unreasonable under § 2254. Accordingly, the court denies Petitioner's ineffective assistance

---

[7] As an aside, while the South Carolina Court of Appeals declared Dr. Henderson's testimony to be improper, the South Carolina Supreme Court found Mangal's ineffective assistance of counsel claim was procedurally barred, so this issue was not reviewed on the merits. It is unclear whether the South Carolina Supreme Court would have also found Dr. Henderson's testimony to be improper under state law.

of counsel claim and grants summary judgment for Respondent.

## CONCLUSION

After a de novo review of each part of the Report to which Petitioner specifically objected, the court hereby adopts the Report and Recommendation, ECF No. 18, as set forth above. For the reasons explained by this court, Respondent's motion for summary judgment, ECF No. 11, is **GRANTED** in its entirety, and the petition, ECF No. 1, is **DISMISSED** with prejudice.

It is further ordered that a certificate of appealability is denied because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[8]

IT IS SO ORDERED.

March 19, 2025  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge

---

[8] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Here, the court finds that Petitioner has failed to make "a substantial showing of the denial of a constitutional right."